

**SIGNED this 15th day of June, 2012.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court

Western District of Texas
San Antonio Division

| IN RE: | BANKR. CASE NO. |
|---|---|
| SANDRA LEE SCOTT-HOOD | 11-53580 |
| *DEBTOR* | CHAPTER 13 |

**DECISION ON MOTION TO RECONSIDER AND/OR VACATE ORDER GRANTING MOTION FOR ORDERS CONFIRMING TERMINATION OF AUTOMATIC STAY AND FOR ORDER DETERMINING THAT STAY REMAINS IN EFFECT AS TO ACTIONS TAKEN AGAINST PROPERTY OF THE ESTATE**

Sandra Lee Scott-Hood (the "Debtor") filed a Voluntary Petition for Relief under Chapter 13 on October 11, 2011. The Debtor had a bankruptcy case pending within the year preceding this filing—Case No. 09-55022. That case was dismissed on August 19, 2011. Section 362(c)(3), added by the 2005 amendments to the Bankruptcy Code, states that the automatic stay of section 362(a) expires thirty days after filing, unless the debtor files a motion to extend the stay, and obtains a hearing on the motion within that 30 day window. The Debtor never did so here.

1

On March 1, 2012, creditor JPMorgan Chase Bank ("Chase") filed a Motion for Orders Confirming Termination of Automatic Stay Under 11 U.S.C. § 362(j). On March 6, 2012, the court entered an Order Determining Status of Automatic Stay [Docket No. 33], confirming that the stay had terminated with respect to Chase on the real property described in the motion. The order further provided that Chase could take all legal action necessary to enforce its rights under nonbankruptcy law.

On March 16, 2012, the Debtor filed a timely Motion to Reconsider and/or Vacate Order Granting Motion for Orders Confirming Termination of Automatic Stay, and for Order Determining that Stay Remains in Effect as to Actions Taken Against Property of the Estate [Docket No. 35]. The Debtor's Motion seeks a determination that the stay remains in full force and effect with respect to the real property at issue under the terms of section 362(c)(3)(A), because such property is property of the estate, not property of the debtor. As such, says the Debtor, the property is not subject to the termination of stay provisions in section 362(c)(3)(A).

*Discussion*

This case calls for the court to construe the language of Section 362(c)(3)(A), which in relevant part provides:

> (3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)—
>
> > (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate *with respect to the debtor* on the 30th day after the filing of the later case[.]

11 U.S.C. § 362(c)(3)(A) (emphasis added). The highlighted language lies at the center of our analysis, because, as noted, this Debtor did not file a motion to extend the stay under subsection (b). *See In re Moreno*, No. 07-13478-B-13, 2007 Bankr. LEXIS 3992, at *2 (E.D. Cal. Nov. 20, 2007) (noting that debtor had not filed a motion to extend the stay within 30 days as required by 362(c)(3)(B), and concluding that "[e]xtending the time for a hearing under Rule 9006(b) will not postpone termination of the stay, which is mandatory by the plain meaning of § 362(c)(3)(A)"); *but see Capital One Auto Fin. v. Cowley*, 374 B.R. 601, 606-07 (W.D. Tex. Dec. 28, 2006) (declining to decide whether a bankruptcy court "may use its § 105 power to extend the automatic stay once it has terminated pursuant to § 362(c)(3)(B)," but noting that if § 105 did grant such power, the court would have to employ the "traditional test for injunctive relief").

There is a split of authority regarding the interpretation of section 362(c)(3)(A). Most courts agree that section 362(c)(3)(A) terminates the stay with respect to actions against the debtor and the debtor's property, *see, e.g.*, *In re Holcomb*, 380 B.R. 813, 816 (B.A.P. 10th Cir. 2008) (section 362(c)(3)(A) terminates the stay as to the debtor and the debtor's property),[1] courts disagree on whether section 362(c)(3)(A) terminates the stay with respect to property of the *estate*. *See In re Paul*, 2010 Bankr. LEXIS 3324, at *5-7 (Bankr. N.D. Tex. Sept. 17, 2010) (noting split of authority and listing cases). The issue is especially pointed in our district and division because our confirmation orders in chapter 13 cases contain standard language to the effect that property of the estate does *not* revest in the debtor upon confirmation. *See* 11 U.S.C. § 1327(b) ("Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor"): *see also* Amended Standing Order Relating to Chapter 13 Practices in the San Antonio Division (Bankr. W.D.Tex. Nov. 7, 2005); *see also* Bankr. Case No. 11-53580, Order of Confirmation [Doc. # 24] (entered 12/22/11). Thus, in the San Antonio Division of the Western District of Texas, where property of the bankruptcy estate encompasses essentially all property of the debtor as of filing, plus all property acquired post-filing and earnings from services performed post-petition, *see* 11 U.S.C. §§ 541(a), 1306), an early termination of the stay under section 362(c)(3)(A) could be meaningless if the stay does not terminate as to property of the estate. The question squarely presented in this case is this: did the stay terminate under section 362(c)(3)(A) with respect to the subject property, or did the stay remain in effect, because the property was (and is) "property of the estate"?

This court has not found a decision from any court in the Fifth Circuit addressing this particular issue. The majority of courts from other jurisdictions have held that section 362(c)(3)(A), by its plain terms, applies only to the debtor and the debtor's property, and does not terminate the stay with respect to proceedings against property of the estate. *See In re Holcomb*, 380 B.R. 813, 816 (B.A.P. 10th Cir. 2008) (concluding that "the language of § 362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property"); *In re Jumpp*, 356 B.R. 789, 797 (B.A.P. 1st Cir., 2006) (holding that "the automatic stay remains in effect to the extent that the residence is property of the bankruptcy Estate"); *Rinard v. Positive Invs., Inc. (In re Rinard)*, 451 B.R. 12, 19-20 (Bankr. C.D. Cal. 2011) (adopting majority reasoning and stating: "The plain text of § 362(c)(3)(A) is crystal clear that the automatic stay is terminated with respect to the Debtor. There is no mention of the Estate in the text. There are no fuzzy words; there are no hanging paragraphs; there are no words requiring a dictionary…"); *In re Alvarez*, 2010 Bankr. LEXIS 1506, at *10 (Bank. S.D. Cal. May 11, 2010) (concluding that "failure of a debtor to timely obtain an extension of the automatic stay pursuant to § 362(c)(3)(B) results in the termination of the stay under §362(c)(3)(A) as to the debtor only, and not also as to property of the estate"); *In re Graham*, 2008 Bankr. LEXIS 2694 (Bankr. D. Or. Oct. 17, 2008) (adopting

---

[1] *See* discussion *infra* regarding whether the statute's language actually supports application to "property of the debtor."

3

majority approach and holding, based on plain, unambiguous language of section 362(c)(3)(A), that the stay terminates "with respect to the debtor and property of the debtor, but leaves the stay in place respecting property of the estate."); *In re Johnson,* 335 B.R. 805, 806 (Bankr. W.D. Tenn. 2006) ("When read in conjunction with subsection (1), the Court finds that the plain language of § 362(c)(3)(A) dictates that the 30-day time limit only applies to 'debts' or 'property of the debtor' and not to 'property of the estate'"); *In re McFeeley*, 362 B.R. 121 (Bankr. D. Vt. 2007); *In re Jones*, 339 B.R. 360 (Bankr. E.D.N.C. 2006); *In re Williams*, 364 B.R. 361 (Bankr. E.D. Pa. 2006); *In re Rice*, 2006 Bankr. LEXIS 3509 (Bankr. W.D.N.Y. Dec. 19, 2006).

A minority of courts have found the language of section 362(c)(3)(A) to be ambiguous. They focus on the apparent internal "disconnect" between the first part of the subsection ("the stay … with respect to an action taken with respect to a debt *or property securing such debt …*") and the last part ("… shall terminate with respect to the debtor …."). *See In re Reswick*, 446 B.R. 362 (B.A.P. 9th Cir. 2011). These courts have gone on to conclude that, to give effect to the intent of Congress, section 362(c)(3)(A) should be read to terminate the stay not only with respect to the debtor and the debtor's property but also with respect to property of the estate (absent a timely motion to extend the stay). *See id.*; *see also In re Furlong*, 426 B.R. 303 (Bankr. C.D. Ill. 2010); *In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009); *In re Curry*, 362 B.R. 394 (Bankr. N.D. Ill. 2007); *In re Jupiter*, 344 B.R. 754 (Bankr. D.S.C. 2006).

Resort to legislative history is unnecessary when a statute's chosen language is clear. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *see also In re Condor Ins. Ltd.*, 601 F.3d 319, 321 (5th Cir. 2010) ("In a statutory construction case, the beginning point must be in the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished"). If a statute is unclear, however, or if the language as written is demonstrably at odds with the intent of its drafters, then resort to other sources may be appropriate. *See* Thomas J. Waldron & Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA*, 81 AM.BANKR.L.J. 195, 214 (2007). Unfortunately, there are few "other sources" for BAPCPA provisions.[2]

A plain meaning approach to the statute is difficult, though not impossible. It has been said that inartful drafting or poor grammar does not mean that a statute's meaning is no longer

---

[2] Normally, legislative history would be helpful, especially committee reports. However, there was no conference report, no senate committee report, and no floor statements. In addition, the House Report is a mere regurgitation of the statute's language. *See* Waldron & Berma*, supra*, at 217. A number of courts have tracked back through earlier iterations of the bill that was enacted in 2005, finding similarities in the proposed language in those earlier versions, then consulting the House Judiciary Committee Reports with respect to those provisions as support for their interpretation of the current law. *See, e.g., In re Daniel*, 404 B.R. 318, 327-329 (Bankr. N.D.Ill. 2009). The problem with this approach is that it presumes that the legislative intentions of the 105th Congress can be imputed to the intentions of the 109th Congress that enacted the law. Perhaps the intentions of the *lobbyists* were the same. Perhaps even the intentions of the political party from whence came the various bills were the same. But we dare not convert the principle of "legislative intent" into lobbyist intent, or political party intent. *See*

4

plain. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). Our first task, then, is to divine what meaning can be found in a close inspection of the language of section 362(c)(3)(A). For ease of reference, the statute's language is repeated here:

> (A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case[.]

11 U.S.C. § 362(c)(3)(A). At the outset, it is worth noting that the statute would easily yield the reading of the minority with just a few edits:

> (A) the stay under subsection (a) ~~with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease~~ shall terminate ~~with respect to the debtor~~ on the 30th day after the filing of the later case[.]

Indeed, an early House Report with respect to an earlier bill that proposed the same language said essentially this – but *only in the report, not in the proposed statutory language. See* H.R.Rep. No. 105-540, at 80 (1998) ("In the subsequently filed bankruptcy case, the automatic stay terminates 30 days following the filing date of the case …"). That Report offers no explanation for the tortured and confusing language in the proposed statutory language, nor does it explain why the drafters did not simply use the straightforward wording used in the House Report, if that was their intention.

As it is, we are left to parse the language of the statute, rather than the language of a House Report to an unenacted bill. Breaking down the sentence, we first note that the subject of the sentence is "the stay under subsection (a)," referring to section 362(a) *in toto*. The operative verb is "shall terminate." Everything else in the sentence qualifies or delimits these two concepts. Firstly, the subject of the sentence, "the stay," is limited in three significant respects: (1) with respect to an action taken with respect to a *debt*, (2) with respect to an action taken with respect to *property securing such debt* (referring back to the aforementioned "debt"), and (3) with respect to any action taken with respect to any lease.

A "debt" is defined in section 101(12) as "liability on a claim." Claim in turn is defined in section 101(5) as "any right to payment." Thus, one aspect of the stay to be terminated would be any aspect that otherwise bars taking action on a debt – applying of necessity to all creditors, regardless of security.

"Property securing such debt" refers back to "debt," and so picks up all property that stands as collateral for debt. Significantly, that is a smaller universe than "property of the estate." It does not include unencumbered estate property. Nor does it include unencumbered property that is the debtor's property (such as property that reverts to the debtor as a result of section 522). Still, it is easy to identify what property *is* intended to be covered by this language.

5

The third category, actions taken with respect to "any lease", are less relevant to this case, but certainly include all the normal remedies associated with enforcing a lease, including eviction.

As a result of this exercise, we now have three categories – debts, property securing debts (*i..e.*, collateral), and leases. It is the stay with respect to these categories that "shall terminate."

The verb "shall terminate" is also qualified and delimited. Most easily, it limited by a time factor: termination happens on the 30th day after the filing of the case. That is easy enough to understand. Secondly, termination is limited in application – the stay terminates "with respect to the debtor." What does this limitation mean in the context here used? One possibility is that it means "as opposed to the estate." The majority of courts have so concluded, but have failed to apply that conclusion to the context of the rest of the sentence. If we add the qualifier to each of the categories, however, we get the following possible interpretation:

1. The stay terminates as to actions taken with respect to debts, but only insofar as those actions are pursued with respect to the debtor.
2. The stay terminates as to actions taken with respect to property securing such debts, but only insofar as those actions are pursued with respect to the debtor.
3. The stay terminates as to actions taken with respect to leases, but only insofar as those actions are pursued with respect to the debtor.

What would be included and what would be excluded using this breakdown? With regard to the first category, any creditor could pursue the debtor (but not the estate) to collect its debt. That could include dunning notices, phone calls, demand letters, lawsuits, garnishment of wages, and so forth. As the *caveat* is that the pursuit must be with respect to the debtor, no similar pursuit would be permitted against the trustee.

With regard to the second category, there are two limitations. First of all, only property that stands *as collateral* is available to be pursued (this has been noted previously, but bears repeating for clarity's sake). Secondly, such actions can be taken only with respect to the debtor, implying that no similar action could be taken with respect to collateral under the control of the trustee. By this reading, as a practical matter, only property claimed as exempt that also secures a debt could be pursued, and then only as of the time the property *becomes* exempt and so *leaves* the bankruptcy estate. Usually, this category does not exist as of the 30th day after filing. It only comes into existence, at the earliest, thirty days after the conclusion of the § 341 meeting, or some 50 days into the case. See FED.R.BANKR.P. 2003(a), 4003(b), 11 U.S.C. §§ 341(a), 522(c), (*l*). Still, the fact that a given interpretation of a statute delivers less than a constituency might have expected is hardly reason to reject that interpretation. *See United States v. Granderson*, 511 U.S. 39, 68-69 (1994) (Kennedy, J., concurring).

With regard to the third category, action could be taken only with respect to leases "with respect to the debtor." A car lease or an apartment lease would seem to be logical candidates for

6

this subset. How much more broadly this might reach is not clear, and lies beyond the scope of this opinion. However, the important thing worth noting is that there is an obvious category of actions to which this third subset likely applies.

Thus, it is possible to tease out a "plain meaning" reading of the statute. It is worth noting that this approach departs from both the majority and the minority approaches. Still, it has a basis in the language of the statute itself, the preferred starting point for interpreting any provision of the Bankruptcy Code. *See* Waldron & Berman, *supra*, at 232 ("plain meaning is the default entrance, not the mandatory exit"). Under this interpretation, the trustee in a chapter 7 case need not worry about creditors attempting to enforce their debts against the trustee, or against unencumbered property of the estate. What is more, secured creditors would not be free to go after property of the estate that stands as their collateral, because the stay terminates only "with respect to the debtor." Questions remain about some types of leases in chapter 7, but they are not before the court in this case, and while uncertainty around the margins is reason for courts to weigh in to clarify, that uncertainty does not mean that the interpretation offered here is wrong – only that it is incomplete and needs further elaboration when an actual case and controversy is presented.

In chapter 13, section 362(c)(3)(A) works essentially the same way, even though the exemption scheme serves a far more limited purpose in chapter 13 (because non-exempt property is not surrendered to a trustee and liquidated, as it would be in chapter 7), and even though property of the estate in chapter 13 includes all property of the debtor as of the filing, plus all property acquired and all wages earned post-petition, *see* 11 U.S.C. § 1306, and even though, property is not "re-vested" in the debtor until the plan is confirmed, *see* 11 U.S.C. §1327(b). There is still a debtor, as distinct from a trustee and as distinct from the estate or its property. That debtor can still be the target of collection action, litigation, phone calls, and the like. When it comes to the debtor's wages, chapter 13 generates a different outcome, because those wages are property of the estate and so could not be garnished. Finally, property claimed as exempt in chapter 13, even though it is not physically separated out from estate property, is no longer property of the estate as a matter of law. *See In re Halbert*, 146 B.R. 185, 188 (Bankr. W.D. Tex. 1992) ("Once the property is exempted, it is no longer any part of the property of the estate and it 'revests' in the Debtor."). Thus, the stay termination provision works effectively in the same way in chapter 13 as it does in chapter 7 with respect to property that stands as collateral for a debt that is also exempt property. The secured creditor faces the same delay with respect to this property because the property only becomes property of the debtor no earlier than 50 days into the case.

The result reached by the foregoing textual analysis may be less than optimal. The fact that the scope of relief is less robust than creditors who lobbied for this legislation might have hoped for, however, is no reason to conclude that the statute is "truly absurd." It has meaning. It just doesn't have the meaning that the creditor wants it to have. So it often is with statutes. They fail to deliver on the expectations of those who zealously worked for their passage. By the same

7

token, however, the statute *does* deliver more relief, in this court's view, than the majority view says it delivers. That too is but another consequence of the way the statute is written, and how it intersects with the rest of the Bankruptcy Code. The court's job is not to select the optimal policy outcome but to discover the intent of the drafters of the legislation, to the extent that can be done with the interpretative tools available. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also Dolan v. U.S. Postal Service*, 546 U.S. 481, 486 (2006) (definition of words in isolation is not always enough; a court may be required to examine the whole statutory text, considering its purpose and context).[3]

After reviewing both the plain language of the statute itself, as well its narrow context within section 362 and its broader context within the Bankruptcy Code, the court concludes that section 362(c)(3)(A) terminates the stay only with respect to the debtor individually, with respect to the debtor's exempt property that stands as collateral for a debt of the debtor, and with respect to certain leases. It does not terminate with respect to property of the estate.

Accordingly, the Debtor's Motion to Reconsider and/or Vacate Order Granting Motion for Orders Confirming Termination of Automatic Stay, and for Order Determining that Stay Remains in Effect as to Actions Taken Against Property of the Estate is hereby GRANTED. An Order reflecting the court's findings and conclusions will be entered separately.

####

---

[3] Of course, it needs to be added that the limited utility of section 362(c)(3)(A) hardly deprives creditors of remedy. Creditors still have the ability to file motions for relief from automatic stay, pursuant to section 362(d). That motion will be heard within 30 days, and will be granted unless the debtor can offer the creditor adequate protection. It is just that creditors don't have the remedy that they apparently thought they had – though with the clarity of the language of the statute, one wonders what led them to their unrealistic expectations.